# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAHN G. THOMPSON, | 1:07-cv-01299-LJO-GSA (PC) |
| Plaintiff, | |
| v. | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| STATE OF CALIFORNIA, et. al., | (Doc. 1) |
| Defendants. | |

I. **SCREENING ORDER**

   Rahn G. Thompson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis. Plaintiff filed his complaint on September 5, 2007 – which is presently before the Court for screening.

   A. **Screening Requirement**

   The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or

1

1  appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. §
2  1915(e)(2)(B)(ii).
3       "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited
4  exceptions," none of which applies to section 1983 actions. <u>Swierkiewicz v. Sorema N. A.</u>, 534
5  U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a
6  short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R.
7  Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's
8  claim is and the grounds upon which it rests." <u>Swierkiewicz</u>, 534 U.S. at 512. However, "the
9  liberal pleading standard . . . applies only to a plaintiff's factual allegations." <u>Neitze v. Williams</u>,
10 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not
11 supply essential elements of the claim that were not initially pled." <u>Bruns v. Nat'l Credit Union</u>
12 <u>Admin.</u>, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268
13 (9th Cir. 1982)).
14       **B.     Summary of Plaintiff's Complaint**
15       At the time of the issues complained of in his complaint, Plaintiff was a state prisoner at
16 Pleasant Valley State Prison ("PVSP") in Coalinga, California. Plaintiff has subsequently been
17 transferred to Salinas Valley State Prison ("SVSP") in Soledad, California.
18       Plaintiff names defendants: the State of California; Warden James Yates; Captain J.
19 Batcher; Sergeants Gonzales, N. Green, and D. Huckabay; Correctional Officers T. Lee, C.
20 LaPrima, M. Hernandez, W. Tucker, D. Thompson, and J. Melendez; and Appeals Coordinator
21 H. Martinez.
22       Plaintiff alleges that he was transferred to PVSP because of an investigation at Pelican
23 Bay State Prison which found that his life was in danger necessitating he be "relocated and
24 placed in safe keeping, single-celled status." (Doc. 1, pg. 6.) Plaintiff variously complains of
25 being placed with cell mates known to be his enemies so as to amount to failure to
26 protect/provide for his safety, of an incident of excessive force, and of a violation of his due
27 process rights in the handling of his inmate appeals.
28       Plaintiff seeks monetary damages and requests the Court "to intervene & stop prison

2

officials from turning their attention from these attacks. . . " – which the Court interprets as a request for injunctive relief.

Plaintiff has stated some cognizable claims, and may be able to amend to correct deficiencies in his pleading so as to state additional cognizable claims. Thus, he is being given the applicable standards based on his delineated claims for relief and leave to file a first amended complaint.

### C.     Pleading Requirements

#### 1. *State of California as a Defendant*

Plaintiff may not sustain an action against the State of California. The Eleventh Amendment prohibits federal courts from hearing suits brought against an un-consenting state. Brooks v. Sulphur Springs Valley Elec. Co., 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted); see also Seminole Tribe of Fla. v. Florida, 116 S.Ct. 1114, 1122 (1996); Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Austin v. State Indus. Ins. Sys., 939 F.2d 676, 677 (9th Cir. 1991). The State of California is entitled to Eleventh Amendment immunity from suit. Thus, all claims Plaintiff might attempt to state against the State of California are subject to dismissal.

#### 2. *Linkage Requirement*

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th

3

1  Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named
2  defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's
3  federal rights.
4         Plaintiff names Warden James Yates, Capt. Batcher, Sgt. Gonzales, and C.O. LaPrima as
5  defendants. However, Plaintiff fails to link any of these four defendants to any of his factual
6  allegations. Thus, Plaintiff fails to state a cognizable claim against Warden James Yates, Capt.
7  Batcher, Sgt. Gonzales, and/or C.O. LaPrima.
8         Plaintiff mentions "Officer Mr. Ruiz," "Officer Ms. Staton," "Tower Guard Mr. R.V.,"
9  "M.T.A. Mr. Chapman," "R.N. Ms. Davis," "C/O Deathridge," "Mrs. M.E. Rincon," "C/O
10 Rincon," "Officer Rincon," and "Mrs. L. Magee" (Doc. 1, pp. 9, 11 & 12.) without naming them
11 as defendants in either the caption, or Section III. of the form complaint. If Plaintiff intends to
12 pursue claims against these persons, he must appropriately identify them as defendants in this
13 action. Further, Plaintiff must specifically identify which defendant(s) he feels are responsible
14 for any given violation(s) of his constitutional rights. Also, identifiers such as "several prison
15 officers," "a couple prison guards," "some officers," and the like, without surname specificity,
16 are insufficient to link a specific defendant to offending actions.
17         **3.** *Exhibits*
18         Plaintiff's complaint is one hundred eighty-five (185) pages long. Only eighteen (18)
19 pages of the complaint contain Plaintiff's factual allegations, all other pages are exhibits.
20         Plaintiff is advised that the Court is not a repository for the parties' evidence. Originals,
21 or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) need not be
22 submitted until the course of litigation brings the evidence into question (for example, on a
23 motion for summary judgment, at trial, or when requested by the Court). At this point, the
24 submission of evidence is premature as Plaintiff is only required to state a prima facie claim for
25 relief. Thus, in amending his complaint, Plaintiff would do well to simply state the facts upon
26 which he alleges a defendant has violated his constitutional rights and refrain from submitting
27 exhibits.
28         Plaintiff's allegations generally refer the court to his exhibits. If Plaintiff attaches

exhibits to his amended complaint, each exhibit must be specifically referenced. Fed. R. Civ. Pro. 10(c). For example, Plaintiff must state "see Exhibit A" or something similar in order to direct the Court to the specific exhibit Plaintiff is referencing. Further, if the exhibit consists of more than one page, Plaintiff must reference the specific page of the exhibit (i.e. "See Exhibit A, page 3"). Finally, the Court reminds Plaintiff that the Court must assume that Plaintiff's factual allegations are true. Therefore, it is generally unnecessary for a plaintiff to submit exhibits in support of the allegations in a complaint.

### 4. *Injunctive Relief*

Plaintiff is seeking monetary damages and requests the Court "to intervene & stop prison officials from turning their attention from these attacks. . ." – which the Court interprets as a request for injunctive relief. However, because Plaintiff is no longer incarcerated at PVSP, his claim for injunctive relief is moot. Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).

### D.   Claims for Relief

#### 1. *Failure to Protect/Safety*

Plaintiff alleges that various prison personnel failed to provide for his safety/protection via placement in areas where he was accessible and vulnerable to his known enemies.

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray 682 F.2d 1237, 1250-51 (9th Cir. 1982); see also Farmer v. Brennan 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prison must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to

1  establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir.
2  1995).
3        Plaintiff states that he was transferred to PVSP from Pelican Bay State Prison because an
4  investigation proved that his life was in danger, necessitating his safe-keeping in single-celled
5  status. Upon his arrival at PVSP, Plaintiff informed "several prison officers" of his safety issues.
6  Within three weeks he began to receive death threats such that he requested protective custody,
7  which was refused. He was not placed in any "safe housing" and, in January of 2006, when
8  exiting the showers, Plaintiff was attacked by a "LA Crips gang" member. (Doc. 1, pg. 6.)
9  These factual allegations, are sufficient to state a cognizable claim, yet the "several prison
10 officers" are not identified with sufficient specificity so as to link any specific defendant(s) to the
11 offending conduct. If Plaintiff chooses to file an amended complaint, he must link specific
12 defendants to the offending conduct.
13       Plaintiff states that because he filed inmate appeals, Sgt. Huckabay and Sgt. Green told
14 Plaintiff that he would be "dealt with," and shortly thereafter he was removed from his cell,
15 forced to live with an inmate known to be a member of the "Blood's gang," and was told to keep
16 his mouth shut. (Id., pg, 7.) Plaintiff does not state whether he was known to be enemies with
17 the "Blood's gang," and whether any basis existed for Sgt. Huckabay and Sgt. Green to have
18 known that they were endangering Plaintiff by placing a "Blood's gang" member as his cell-
19 mate. Thus, Plaintiff fails to state cognizable claims against Sgt. Huckabay and Sgt. Green for
20 failing to provide for his protection.
21       Subsequently, C/O W. Tucker and "several other prison guards" placed Plaintiff in a cell
22 with a radical Muslim. Plaintiff told C/O W. Tucker and the others that he refused to share a cell
23 with that inmate and that the inmate was well known by prison officers and many inmates for his
24 radical violent views towards Plaintiff. The radical Muslim inmate eventually attacked Plaintiff
25 in his sleep. (Id., pp. 7-9.) These factual allegations, are sufficient to state a cognizable claim
26 against C/O W. Tucker, yet the "several other prison guards" are not identified with sufficient
27 specificity so as to link any specific defendant(s) to the offending conduct. If Plaintiff chooses to
28 file an amended complaint, and to pursue more defendants than just C/O W. Tucker for these

6

actions, he will only be allowed to pursue claims against specific defendants that he has identified and linked to offending conduct.

Also, in October of 2006, C/O Lee ordered Plaintiff to move in with inmate Miller. Plaintiff informed C/O Lee that Miller was a gang member and his enemy, but C/O Lee was not concerned. Miller and Plaintiff argued, and a fight was about to occur when two other inmates broke them up. Sgt. Green said they should have let them fight so he could throw Plaintiff in the hole. Plaintiff informed the " 'officer' on the paty" of the situation between himself and Miller and that another inmate who had attacked Plaintiff just a few weeks prior lived just a few cells away. C/O Deathridge (not a named defendant) made a phone call, and approximately fifteen minutes later C/O W. Tucker entered the cell with Miller, placed all of Miller's items on the top shelves and ordered Plaintiff to move in. Plaintiff refused to enter Miller's cell. The "above mentioned officers" left the building for a shift change. C/Os Hernandez and Rincon (not named defendants) came on shift and, despite Plaintiff's protests and informing them that Miller was an enemy, C/O Hernandez physically pushed Plaintiff into Miller's cell and shut the cell door behind him. Plaintiff begged "prison guards" and Sgt. Green to be moved, but his requests were denied. In November, Miller attacked Plaintiff twice, stabbing him across the neck, eye, and left arm. (Id., pp. 10-12.) These allegations state cognizable claims for failing to provide for Plaintiff's protection/safety against named defendants C/O Lee, Sgt. Green, and C/O W. Tucker, and would also state cognizable claims against C/Os Deathridge, Hernandez, and Rincon if they were named as defendants. Further, Plaintiff might be able to state cognizable claims against "the 'officer' on the paty," and the "prison guards," but fails to sufficiently identify them so as to link their actions to any named defendant(s).

Plaintiff also alleges that C/O Tucker took his medically required cane and knee brace, because C/O Tucker felt that Plaintiff did not need it, which caused Plaintiff to fall and sustain injuries. (Id., pp. 8-10.) Plaintiff fails to state a cognizable claim against C/O Tucker for failing to provide for his protection/safety in as much as Plaintiff alleges that C/O Tucker took Plaintiff's cane and knee brace, not out of deliberate indifference to a known risk of injury to Plaintiff, but rather because C/O Tucker felt that Plaintiff did not need them.

7

**2.** *Excessive Force*

Plaintiff alleges that he was subjected to excessive force.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

Plaintiff first alleges that he was subjected to excessive force when C/O Tucker "forcefully took" Plaintiff's cane and knee brace, and subsequently directed Plaintiff to go to his building (some 200+ yards away), which ultimately resulted in Plaintiff falling so as to cause further damage to his knee. (Doc. 1, pg. 8.) Plaintiff subsequently alleges that C/O Tucker took the cane and knee brace because he felt that Plaintiff did not need them. (Id., pg. 10.) C/O Tucker's "forcefully" taking of the cane and knee brace from Plaintiff because he felt Plaintiff did not need them does not amount to a malicious and sadistic use of force, or an act that goes against contemporary standards of decency. If C/O Tucker knew that Plaintiff needed the cane and knee brace, and intentionally took them, hoping to cause Plaintiff to fall and sustain injuries, then his actions might amount to a use of excessive force. However, as stated, Plaintiff fails to state a cognizable claim against C/O Tucker for excessive force for the taking of his cane and knee brace.

Plaintiff also alleges that he was subjected to excessive force by C/O Thompson and C/O

8

Melendez, when, subsequent to the incident of inmate Miller stabbing Plaintiff, they responded to Plaintiff's cell and Miller told them that Plaintiff had attacked Miller.  C/Os Thompson and Melendez sprayed Plaintiff with chemical agents, handcuffed Plaintiff's hands behind his back, assaulted Plaintiff, and "forcefully and brutely (sic) dragged" Plaintiff, while handcuffed over 250 feet across concrete, loose rocks, gravel, dirt, and grass causing Plaintiff's pants and underwear to fall off leaving him completely exposed in front of other officers, two of whom were female, and all of whom laughed loudly at Plaintiff.  Further, C/Os Thompson and Melendez cursed at Plaintiff and threw him violently to the ground.  These actions by C/Os Thompson and Melendez caused Plaintiff to be diagnosed with several damaged and ruptured discs in his neck and back.  (Id., pp. 12-14.)  These allegations state cognizable claims against C/Os Thompson and Melendez for the excessive use of force.

### 3. *Deliberate Indifference to Serious Medical Needs*

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991).  A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (*quoting* Estelle, 429 U.S. at 104)

If a prisoner establishes the existence of a serious medical need, he or she must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 834 (1994).  In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir.1988).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004).  "Under this standard, the prison official must not only 'be aware of the

9

facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994) (*per curiam*); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*).

Plaintiff's allegation that C/O Tucker was deliberately indifferent to his serious medical needs when he forcefully removed Plaintiff's doctor issued cane and orthopedic knee brace does not rise to the level of deliberate indifference to a serious medical need. Plaintiff does not allege that C/O Tucker denied, delayed, or intentionally interfered with his medical treatment. Tucker is a correctional officer, not a physician, or medical provider per C.C.R. Title 15, Section 3354. Even in the light most favorable to Plaintiff, an officer's taking of medically indicated apparatuses does not make the officer a medical provider. Plaintiff does not allege that C/O Tucker made any decisions regarding Plaintiff's medical care and/or course(s) of treatment, or interfered with his access to, or delayed his receipt of medical care. Further, Plaintiff fails to show deliberate indifference by C/O Tucker as he states that C/O Tucker took his cane and knee brace because he felt that Plaintiff did not need them. Thus, Plaintiff fails to state a cognizable claim against C/O Tucker for deliberate indifference to Plaintiff's serious medical needs for taking Plaintiff's cane and orthopedic knee brace.

Further, after Plaintiff limped the 200+ yards to get to his building without his cane and knee brace, he alleges that "several correctional officers" including Mr. Ruiz, Officer Ms. Staton,

1  and Tower Guard Mr. R.V. (none of whom were named as defendants) witnessed him fall on the
2  concrete floor; that no one called for medical help; and that he lay there crying out in pain and for
3  assistance for 15-20 minutes until C/O Tucker along with "several of his crew buddies" grabbed
4  Plaintiff by his arms and shoulders and drug him across the floor, subsequently throwing him
5  into his cell.  (Doc. 1, pp. 8-9.)  A serious medical need exists if the failure to obtain medical
6  assistance for a prisoner's condition could result in the "unnecessary and wanton infliction of
7  pain."  McGuckin, 974 F.2d at 1059.  Plaintiff's allegations state a cognizable claim against C/O
8  Tucker for deliberate indifference to his serious medical needs for grabbing Plaintiff, as he lay on
9  the floor crying out in pain and for assistance, dragging him by the arms and shoulders, and
10 throwing him into his cell – rather than obtaining medical assistance for Plaintiff.  Plaintiff
11 cannot proceed against Mr. Ruiz, Officer Ms. Staton, and Tower Guard Mr. R.V. since they are
12 not named defendants.  Further, Plaintiff cannot proceed against the "several of [C/O Tucker's]
13 crew buddies" and "several correctional officers" as he fails to sufficiently identify them so as to
14 link them to the offending allegations.

### 4. *Retaliation*

16 Plaintiff does not call out that he intends to pursue claims for unconstitutional retaliation.
17 However, he states clearly cognizable retaliation claims against Sgt. Huckabay and Sgt. Green.
18 Allegations of retaliation against a prisoner's First Amendment rights to speech or to
19 petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532
20 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v.
21 Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First
22 Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some
23 adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that
24 such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did
25 not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-
26 68 (9th Cir. 2005).
27 An allegation of retaliation against a prisoner's First Amendment right to file a prison
28 grievance is sufficient to support claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288

(9th Cir. 2003).

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Plaintiff alleges that because he filed inmate appeals, Sgt. Huckabay and Sgt. Green told Plaintiff that he would be "dealt with," and that shortly thereafter he was removed from his cell and forced to live with an inmate known to be a member of the "Blood's gang," and was told to keep his mouth shut. (Doc. 1, pg. 7.) These allegations state cognizable retaliation claims against Sgt. Huckabay and Sgt. Green.

### 5. *Due Process – Inmate Appeals*

Plaintiff appears to grieve the processing, and reviewing of his 602 inmate appeals related to his safety concerns.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no

entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).

Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails, and is unable to state a cognizable claim for the processing and/or reviewing of his 602 inmate appeals.

### 6. *Substantive Due Process*

Plaintiff alleges C/O Tucker destroyed his cane and knee brace. (Doc. 1, pp. 8-10.)

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson v. Palmer, 468 U.S. 517, 533 (1984).

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d 534, 543 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 32 Cal.4th at 1245, 90 P.3d at 124, 13 Cal.Rptr.3d at 543; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff fails to allege facts to establish compliance with California's Tort Claims Act. Thus, he fails to state a cognizable claim against C/O Tucker for removing and destroying his cane and knee brace.

### 7. *Supervisory Liability*

Plaintiff names the following supervisorial defendants: Warden Yates; Captain Batcher; Sergeants Gonzales, Green, and Huckabay; and Appeals Coordinator Martinez.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v.

Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff has not alleged any facts indicating that Warden Yates, Captain Batcher, Sergeant Gonzales, and Appeals Coordinator Martinez personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black at 646. To that end, Plaintiff fails to state a cognizable claim against Warden Yates, Captain Batcher, Sergeant Gonzales, and/or Appeals Coordinator Martinez. Plaintiff's allegations of personal participation by Sergeants Green and Huckabay state cognizable claims which were previously discussed herein above.

## II. CONCLUSION

For the reasons set forth above, Plaintiff's complaint is dismissed, with leave to file an amended complaint within thirty days. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in his complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Hydrick v. Hunter, 500 F.3d 978, 987-88 (9th Cir. 2007). Although accepted as true, the

"[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
    a. File an amended complaint curing the deficiencies identified by the Court in this order, or
    b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only on the claims identified by the Court as viable/cognizable in this order; and
4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

Dated:   **January 8, 2009**            /s/ Gary S. Austin

UNITED STATES MAGISTRATE JUDGE