# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAHN G. THOMPSON, | 1:07-cv-01299-LJO-GSA-PC |
| Plaintiff, | <u>SECOND SCREENING ORDER</u> |
| v. | ORDER FOR PLAINTIFF TO EITHER:<br>(1) FILE A THIRD AMENDED COMPLAINT, OR<br>(2) NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ONLY ON THE CLAIMS FOUND COGNIZABLE BY THE COURT |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | |
| | THIRTY-DAY DEADLINE TO FILE THIRD AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED |

**I.  RELEVANT PROCEDURAL HISTORY**

Rahn G. Thompson ("Plaintiff") is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on September 5, 2007. (Doc. 1.) The Court screened the Complaint pursuant to 28 U.S.C. 1915A and entered an order on January 8, 2009, requiring Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed on the claims found cognizable by the Court. (Doc. 14.) On April 16, 2009, Plaintiff filed the First Amended Complaint. (Doc. 19.) On November 10, 2009, with leave of court, Plaintiff filed the Second Amended Complaint, which is now before the Court for screening. (Doc. 25.)

1

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is only required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff is currently a state prisoner at the California State Prison in Corcoran, California. The events at issue in the Second Amended Complaint allegedly occurred at Pleasant Valley State Prison ("PVSP") in Coalinga, California, while Plaintiff was incarcerated there. Plaintiff names as defendants Sergeant ("Sgt.") N. Green, Sgt. D. Huckabay, RN Ms. Davis, Med Tech Mr. Chapman, and Correctional Officers ("C/O"s) W. Tucker, D. Thompson, J. Melendez, M. Hernandez, M. E. Rincon, T. Lee, Deathridge, and H. Martinez.

Plaintiff alleges as follows in the Second Amended Complaint.

2

***Failure to Protect***

While Plaintiff was incarcerated at Pelican Bay State Prison, he became aware that he would be a victim of an attack by another inmate. After an investigation, prison officials determined that Plaintiff should be removed from the general population and housed in administrative segregation under safety watch. Plaintiff continued to receive death threats and was placed on single-cell status under protective custody watch. On November 22, 2005, the Institution Classification Committee decided that Plaintiff should be transferred to a sensitive needs yard at another prison and should remain on single-cell status.

In December 2005, Plaintiff was transferred to PVSP. When it became known that Plaintiff was at PVSP, he was threatened with attacks. Plaintiff immediately informed C/O Tucker, Sgt. Green, and Sgt. Huckabay and requested to be placed in protective custody. Plaintiff informed C/O Tucker, Sgt. Green, and Sgt. Huckabay of the written documentation in Plaintiff's prison records, to make them aware of Plaintiff's need for safe protective housing. Plaintiff alleges that all of the named defendants deliberately refused to consider Plaintiff's safety concerns.

In January 2006, Plaintiff was assaulted by a Crips gangmember as he was exiting the shower. Plaintiff filed a 602 prison complaint, an investigation was conducted, and the appeals examiner confirmed that Plaintiff was defending himself. C/O Tucker, Sgt. Green, and Sgt. Huckabay became very angry about Plaintiff's complaints about his safety and told him he would get "dealt with." Shortly thereafter, Plaintiff was removed from his single cell and ordered by C/O Tucker to share a cell with a known Bloods gangmember. C/O Tucker ordered Plaintiff to keep his mouth shut. Plaintiff's records contain documentation that he should not be housed with any Crips or Bloods gangmember, or any Radical Muslim. Defendants C/O Tucker, Sgt. Green, Sgt. Huckabay, C/O Hernandez, C/O Rincon, C/O Deathridge, and C/O Lee were repeatedly informed by Plaintiff of his safety issues and concerns, but they all refused to provide Plaintiff with safe housing. Plaintiff continued to file complaints requesting to be placed in protective custody, but no one would listen or help him. He was finally removed from the cell, but only for a short period.

In October 2006, C/O Tucker ordered Plaintiff to accept a Radical Muslim inmate as a cell mate. Plaintiff again informed C/O Tucker that he would be in grave danger, begged C/O Tucker

3

1  not to force him to be housed with a documented enemy, and repeatedly requested protective
2  custody.  C/O Tucker left and returned with several other officers and loudly ordered Plaintiff to
3  follow orders.  Plaintiff protested, informing C/O Tucker that he had been attacked by two of the
4  Muslim inmate's associates at Pelican Bay State Prison.  C/O Tucker pushed Plaintiff aside and told
5  the Muslim inmate to enter his cell.  Shortly thereafter, when Plaintiff was asleep, his cell mate
6  assaulted him, resulting in Plaintiff being taken to the prison infirmary.

7  Later in October 2006, Plaintiff was ordered by C/O Lee to move into another building and
8  share a cell with inmate Miller.  Plaintiff emphatically informed C/O Lee that inmate Miller was his
9  enemy, an active Bloods gangmember, and that there was documentation in Plaintiff's file showing
10 he should not be housed with a Bloods' gangmember.  C/O Lee refused to show concerns for
11 Plaintiff's safety and told Plaintiff he would "throw my ass in the Hole if I don't get out of his sight."
12 2d Amd Cmp ¶21.  Plaintiff informed C/O Lee that the inmate who attacked him a few weeks ago
13 was housed in the other building, and made C/O Lee aware of the documentation in his file.  C/O
14 Lee ignored Plaintiff's concerns.  As Plaintiff was moving to the other building, he was approached
15 outside by inmate Miller who said "Nigga I don't want you in my cell."  The two inmates argued and
16 were separated by other inmates before a fight started.  Sgt. Green said they "should've fought and
17 then Thompson's ass would have been thrown in the Hole."  2d Amd Cmp ¶24.  Plaintiff pleaded
18 with Sgt. Green for his safety, but Sgt. Green ignored him and ordered him to enter the building.

19 Plaintiff entered the building but refused to enter the cell.  He approached the floor officer
20 C/O Deathridge and told him about the dangerous enemy situation with inmate Miller and the earlier
21 assault by the Muslim inmate.  Plaintiff also told C/O Deathridge about the documentation in his file.
22 C/O Deathridge made a phone call, and afterward C/O Tucker arrived, moved inmate Miller's
23 property from the bottom bunk to the top bunk, and ordered Plaintiff to move in.  Plaintiff refused
24 to enter the cell.  He approached floor officers C/O Rincon and C/O Hernandez, informed them
25 about his two enemies in the building, and asked to be housed in another building.  C/O Hernandez
26 pushed Plaintiff into the cell and shut the cell door.  Plaintiff continued to complain about his
27 situation to the defendants.  Sgt. Green told him, "Handle it, Thompson."  2d Amd Cmp ¶34.  On
28 ///

4

November 14, 2006, inmate Miller attacked Plaintiff, stabbed him twice, cut Plaintiff's neck and eye, and stabbed him in the left arm.

### *Adverse Conditions of Confinement and Excessive Force*

C/O Tucker knew Plaintiff needed his medically-ordered orthopedic knee brace and cane, but on October 5, 2006[1] he forcefully took the brace and cane and destroyed the brace. C/O Tucker then ordered Plaintiff to "get to your building now!" 2d Amd Cmp ¶37. The building was over 200 yards away. Plaintiff asked C/O Tucker to give him back the medical devices, but he refused and told Plaintiff if he didn't get going, he would be thrown in the Hole. Plaintiff obeyed and limped the long distance. Upon entering the building, Plaintiff's knee gave out and he fell to the floor. Plaintiff cried out in pain and begged for help. C/O Tucker grabbed Plaintiff's arms, dragged him across the floor, and threw him into the cell. Plaintiff complained to C/O Tucker, Sgt. Green, and Sgt. Huckabay that he was in severe pain, but he was not allowed to see a doctor until a few weeks later.

The doctor examined Plaintiff. Plaintiff informed the doctor that C/O Tucker had taken away his medical devices. The doctor told Plaintiff that his knees had been further damaged by walking without the brace and cane. The doctor immediately ordered the return of Plaintiff's devices and said he should wear soft-soled shoes. The doctor told Med Tech Chapman and RN Davis that no prison guard should ever take away any of Plaintiff's medical devices, and C/O Tucker's actions were not acceptable. RN Davis and Med Tech Chapman questioned C/O Tucker, who admitted he took Plaintiff's brace and intentionally destroyed it, claiming he felt Plaintiff did not need a knee brace.

### *Additional Excessive Force*

On November 14, 2006, inmate Miller attacked Plaintiff, stabbed him twice, cut Plaintiff's neck and eye, and stabbed him in the left arm. That same night, C/O Thompson and C/O Melendez sprayed Plaintiff in his eyes, nose, and mouth, and across his upper torso with an unknown gas and chemicals, which burned Plaintiff terribly. C/O Thompson and C/O Melendez then grabbed Plaintiff and handcuffed his hands in back, disregarding Plaintiff's disability and limited mobility. C/O Thompson and C/O Melendez dragged Plaintiff, still cuffed, more than 250 feet across concrete,

---

[1] Although Plaintiff does not give a date for this event in the Second Amended Complaint, he gives the date of October 5, 2006 in the original Complaint filed September 5, 2007. Cmp, Doc. 1, Exh. D at 41-42.

rocks, gravel, grass and dirt. At one point, C/O Melendez cursed at Plaintiff, and both officers threw him to the ground. Plaintiff begged them to stop the assault, but they continued to drag him until his pants and underwear came off and he was completely exposed. Several officers, including two female officers C/O Rincon and Ms. Magee, laughed loudly at him, and Ms. Magee picked his underwear up off the ground.

As a result of this attack, Plaintiff suffered severe and constant pain in his neck, back, shoulders, left knee, and head. Plaintiff was taken to the doctor who found that the officers had damaged and ruptured several discs in Plaintiff's neck and back. The doctor ordered Plaintiff to use a wheelchair and told Plaintiff, in the presence of several nurses, that he should be careful because another attack could put him in a wheelchair permanently.

*__Retaliation__*

Plaintiff filed many 602 complaints for being denied safe housing, and C/O Tucker, Sgt. Green, and Sgt. Huckabay became very angry about Plaintiff's complaints about his safety and told him to keep his mouth shut and that he would be "dealt with." Plaintiff alleges that Sgt. Green, Sgt. Huckabay, and C/O Tucker retaliated against him for filing complaints when they repeatedly removed him from his cell and forced him to share a cell with known enemy gangmembers.

Plaintiff requests money damages and injunctive relief.

**IV.  PLAINTIFF'S CLAIMS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

///

**A.   Exhibits**

In the Second Amended Complaint, Plaintiff refers the Court to several exhibits which were not submitted with the Second Amended Complaint. Plaintiff states at ¶64 of the Second Amended Complaint that he "will forward All Exhibits A thru L upon request by this respected Court." Based on this statement, it appears that Plaintiff meant to omit the exhibits. It is true that exhibits are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a), and Plaintiff will have an opportunity to submit evidence at a later stage of the proceedings if this action reaches a juncture at which the submission of evidence is appropriate and necessary (e.g., summary judgment or trial). Because Plaintiff has not attached the exhibits, they have not been incorporated by reference into the Second Amended Complaint. Fed. R. Civ. P. 10(c). Therefore, the Court's screening is based upon Plaintiff's allegations in the Second Amended Complaint without reference to the exhibits.

**B.   Personal Participation - Defendant C/O H. Martinez**

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of her rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 129 S.Ct. at 1948-49.

In the Second Amended Complaint, Plaintiff did not allege any facts concerning acts by defendant C/O H. Martinez. Therefore, Plaintiff fails to state any claim against defendant C/O H. Martinez.

**C.   Eighth Amendment -- Adverse Conditions of Confinement**

Plaintiff alleges he was subject to adverse conditions of confinement. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and

disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff alleges that on October 5, 2006, defendant C/O Tucker forcefully took away Plaintiff's orthopedic knee brace and cane, destroyed the cane, and ordered Plaintiff to "get to your building now," forcing him to walk, limping, over 200 yards without his medical devices, resulting in pain and injury to Plaintiff's knees. Therefore, Plaintiff states a cognizable claim against defendant C/O Tucker for adverse conditions of confinement in violation of the Eighth Amendment.

### D.   Eighth Amendment – Excessive Force

Plaintiff alleges he was subject to excessive force. "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson, 503 U.S. at 8. "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted).

8

"The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Plaintiff alleges that on October 5, 2006, his knee gave out and he fell to the floor, and when he cried out in pain and begged for help, C/O Tucker grabbed Plaintiff's arms, dragged him across the floor, and threw him into the cell.

Plaintiff also alleges that on November 14, 2006, C/O Thompson and C/O Melendez sprayed chemicals in Plaintiff's eyes, nose, and mouth, and on his torso, which burned Plaintiff terribly. C/O Thompson and C/O Melendez then dragged Plaintiff in handcuffs more than 250 feet across concrete, rocks, gravel, grass and dirt, until his pants and underwear came off, rupturing several discs in Plaintiff's neck and back and causing him severe pain.

Plaintiff states cognizable claims against defendants C/O Tucker, C/O Thompson, and C/O Melendez for using excessive force against him in violation of the Eighth Amendment.

### E.  Eighth Amendment – Failure to Protect

Plaintiff alleges that defendants failed to protect him from harm. Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost, 152 F.3d at 1128. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

Plaintiff states cognizable claims against C/O Tucker, Sgt. Green, C/O Lee, C/O M. Hernandez, C/O Rincon, C/O Deathridge, and Sgt. Huckabay for failure to protect him, when they failed to provide him with protective housing knowing he was under threat of attack, and Plaintiff was attacked.

///

///

### F. Retaliation

Plaintiff alleges he was retaliated against by defendants. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff alleges that defendants C/O Tucker, Sgt. Green, and Sgt. Huckabay threatened him and repeatedly removed him from his cell and forced him to share a cell with known enemy gangmembers, because they were angry about him filing many 602 complaints for being denied safe housing. Therefore, Plaintiff states a cognizable claim for retaliation against defendants C/O Tucker, Sgt. Green, and Sgt. Huckabay.

### G. Defendants RN Davis and Medical Tech Chapman

Plaintiff alleges that Plaintiff's doctor told defendants RN Ms. Davis and Medical Tech Mr. Chapman that prison guards should not take away Plaintiff's medical devices and that C/O Tucker's actions were not acceptable. Plaintiff also alleges that defendants Davis and Chapman questioned C/O Tucker, who admitted he took Plaintiff's brace and intentionally destroyed it, claiming he felt Plaintiff did not need a knee brace. Under these facts, Plaintiff fails to state any cognizable claim against defendants Davis and Chapman.

## V. CONCLUSION AND ORDER

The Court finds that Plaintiff's Second Amended Complaint states cognizable claims against defendant C/O Tucker for subjecting Plaintiff to adverse conditions of confinement; against defendants C/O Tucker, Sgt. Green, C/O Lee, C/O M. Hernandez, C/O Rincon, C/O Deathridge, and Sgt. Huckabay for failure to protect him; against C/O Tucker, Sgt. Green, and Sgt, Huckabay for retaliation; and against defendants C/O Tucker, C/O Thompson, and C/O Melendez for using excessive force. However, Plaintiff fails to state any other claims upon which relief can be granted under section 1983 against defendants RN Davis, Medical Tech Chapman, C/O H. Martinez, or any other defendant. Plaintiff shall be required to either file a Third Amended Complaint, or notify the

Court of his willingness to proceed on the failure to protect, excessive force, adverse conditions of confinement, and retaliation claims, against defendants Tucker, Green, Lee, Thompson, Melendez, Rincon, Hernandez, Deathridge, and Huckabay. Should Plaintiff choose to proceed only against defendants Tucker, Green, Lee, Thompson, Melendez, Rincon, Hernandez, Deathridge, and Huckabay on the claims discussed above, the Court will begin the process to initiate service upon defendants Tucker, Green, Lee, Thompson, Melendez, Rincon, Hernandez, Deathridge, and Huckabay by the United States Marshal.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires.'" The Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above should he wish to do so. Plaintiff is granted leave to file a Third Amended Complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Should Plaintiff choose to amend the complaint, the Third Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 129 S.Ct. at 1948-49; Jones, 297 F.3d at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 555). As stated above, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding unrelated issues. In addition, Plaintiff should take care to include only those claims that have been administratively exhausted.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly

titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:

   (1) File a Third Amended Complaint curing the deficiencies identified in this order, or

   (2) Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only against defendant Tucker for subjecting Plaintiff to adverse conditions of confinement in violation of the Eighth Amendment; against defendants Tucker, Green, Lee, Rincon, Hernandez, Deathridge, and Huckabay for failure to protect Plaintiff in violation of the Eighth Amendment; against defendants Tucker, Green, and Huckabay for retaliation in violation of the First Amendment; and against defendants Tucker, Thompson, and Melendez for using excessive force against Plaintiff in violation of the Eighth Amendment;

3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "Third Amended Complaint" and refer to the case number 1:07-cv-01299-LJO-GSA-PC; and

4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **March 23, 2011**            /s/ **Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE