# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAHN G. THOMPSON, | 1:07-cv-01299-LJO-GSA-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED IN PART |
| v. | |
| STATE OF CALIFORNIA, et al., | (Doc. 52.) |
| Defendants. | OBJECTIONS, IF ANY, DUE IN THIRTY DAYS |

_____/

## I.    BACKGROUND

Rahn G. Thompson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on September 5, 2007.  (Doc. 1.)  This action now proceeds with the Second Amended Complaint filed on November 10, 2009, against defendant Tucker for subjecting Plaintiff to adverse conditions of confinement; against defendants Tucker, Green, Lee, Rincon, Hernandez, Deathridge, and Huckabay for failing to protect Plaintiff; against defendants Tucker, Green, and Huckabay for retaliating against Plaintiff; and against defendants Tucker, Thompson, and Melendez for using excessive force against Plaintiff.[1]  (Doc. 25.)

On September 27, 2011, defendants Deathridge, Green, Hernandez, Huckabay, Lee, Melendez, Rincon, Thompson, and Tucker ("Defendants") filed a motion to dismiss for failure to

---

[1]On June 8, 2011, the Court dismissed all other claims and defendants from this action, based on Plaintiff's failure to state a claim.  (Doc. 37.)

1  exhaust administrative remedies under Rule 12(b), and failure to state a claim for retaliation under

2  Rule 12(b)(6).[2]  (Docs. 52-58.)  On November 21, 2011, Plaintiff filed an opposition to the motion.[3]

3  (Doc. 61.)  On December 6, 2011, Defendants filed a reply to Plaintiff's opposition and objections

4  to Plaintiff's evidence.  (Docs. 66, 67.)  On February 1, 2012, Plaintiff filed an opposition to

5  Defendants' objections.  (Doc. 71.)  Defendants' motion to dismiss is now before the Court.

6  **II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS**

7          Plaintiff is currently a state prisoner at High Desert State Prison in Susanville, California.

8  The events at issue in the Second Amended Complaint allegedly occurred at Pleasant Valley State

9  Prison ("PVSP") in Coalinga, California, while Plaintiff was incarcerated there.  Plaintiff names as

10  defendants Sergeant ("Sgt.") N. Green, Sgt. D. Huckabay, RN Ms. Davis, Med Tech Mr. Chapman,

11  and Correctional Officers ("C/O"s) W. Tucker, D. Thompson, J. Melendez, M. Hernandez, M. E.

12  Rincon, T. Lee, Deathridge, and H. Martinez.[4]

13          Plaintiff alleges as follows in the Second Amended Complaint.

14          ***Failure to Protect***

15          While Plaintiff was incarcerated at Pelican Bay State Prison, he became aware that he would

16  be a victim of an attack by another inmate.  After an investigation, prison officials determined that

17  Plaintiff should be removed from the general population and housed in administrative segregation

18  under safety watch.  Plaintiff continued to receive death threats and was placed on single-cell status

19  under protective custody watch.  On November 22, 2005, the Institution Classification Committee

20  decided that Plaintiff should be transferred to a sensitive needs yard at another prison and should

21  remain on single-cell status.

22

23          [2]It is not clear in the motion to dismiss whether defense counsel ("Counsel") represents defendant
24  Hernandez; however, Counsel filed a notice of clarification on November 9, 2012, confirming that Counsel is
   representing all nine of the defendants, including defendant Hernandez, and that the motion to dismiss was brought
25  on behalf of all nine of the defendants.  (Doc. 87 at ¶1.)

26          [3]Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion on
   June 6, 2011, July 10, 2012, and August 23, 2012.  Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Wyatt v.
27  Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003); Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998).  (Docs. 35, 75,
   78.)

28          [4]Defendants Davis, Chapman, and Martinez were dismissed from this action by the Court on June 8, 2011,
   based on Plaintiff's failure to state any claims against them upon which relief may be granted.  (Doc. 37.)

In December 2005, Plaintiff was transferred to PVSP. When it became known that Plaintiff was at PVSP, he was threatened with attacks. Plaintiff immediately informed C/O Tucker, Sgt. Green, and Sgt. Huckabay and requested to be placed in protective custody. Plaintiff informed C/O Tucker, Sgt. Green, and Sgt. Huckabay of the written documentation in Plaintiff's prison records, to make them aware of Plaintiff's need for safe protective housing. Plaintiff alleges that all of the named defendants deliberately refused to consider Plaintiff's safety concerns.

In January 2006, Plaintiff was assaulted by a Crips gang member as he was exiting the shower. Plaintiff filed a 602 prison complaint, an investigation was conducted, and the appeals examiner confirmed that Plaintiff was defending himself. C/O Tucker, Sgt. Green, and Sgt. Huckabay became very angry about Plaintiff's complaints about his safety and told him he would get "dealt with." Shortly thereafter, Plaintiff was removed from his single cell and ordered by C/O Tucker to share a cell with a known Bloods gang member. C/O Tucker ordered Plaintiff to keep his mouth shut. Plaintiff's records contain documentation that he should not be housed with any Crips or Bloods gang member, or any Radical Muslim. Defendants C/O Tucker, Sgt. Green, Sgt. Huckabay, C/O Hernandez, C/O Rincon, C/O Deathridge, and C/O Lee were repeatedly informed by Plaintiff of his safety issues and concerns, but they all refused to provide Plaintiff with safe housing. Plaintiff continued to file complaints requesting to be placed in protective custody, but no one would listen or help him. He was finally removed from the cell, but only for a short period.

In October 2006, C/O Tucker ordered Plaintiff to accept a Radical Muslim inmate as a cell mate. Plaintiff again informed C/O Tucker that he would be in grave danger, begged C/O Tucker not to force him to be housed with a documented enemy, and repeatedly requested protective custody. C/O Tucker left and returned with several other officers and loudly ordered Plaintiff to follow orders. Plaintiff protested, informing C/O Tucker that he had been attacked by two of the Muslim inmate's associates at Pelican Bay State Prison. C/O Tucker pushed Plaintiff aside and told the Muslim inmate to enter his cell. Shortly thereafter, when Plaintiff was asleep, his cell mate assaulted him, resulting in Plaintiff being taken to the prison infirmary.

Later in October 2006, Plaintiff was ordered by C/O Lee to move into another building and share a cell with inmate Miller. Plaintiff emphatically informed C/O Lee that inmate Miller was his

enemy, an active Bloods gang member, and that there was documentation in Plaintiff's file showing he should not be housed with a Bloods gang member.  C/O Lee refused to show concern for Plaintiff's safety and told Plaintiff he would "throw [Plaintiff's] ass in the Hole if [Plaintiff didn't] get out of his sight." (2d Amd Cmp ¶21.)  Plaintiff informed C/O Lee that the inmate who attacked him a few weeks ago was housed in the other building, and made C/O Lee aware of the documentation in his file.  C/O Lee ignored Plaintiff's concerns.  As Plaintiff was moving to the other building, he was approached outside by inmate Miller who said, "Nigga I don't want you in my cell." (2d Amd Cmp ¶23.)  The two inmates argued and were separated by other inmates before a fight started.  Sgt. Green said they "should've fought and then Thompson's ass would have been thrown in the Hole." (2d Amd Cmp ¶24.)  Plaintiff pleaded with Sgt. Green for his safety, but Sgt. Green ignored him and ordered him to enter the building.

Plaintiff entered the building but refused to enter the cell.  He approached  the floor officer C/O Deathridge and told him about the dangerous enemy situation with inmate Miller and the earlier assault by the Muslim inmate.  Plaintiff also told C/O Deathridge about the documentation in his file. C/O Deathridge made a phone call, and afterward C/O Tucker arrived, moved inmate Miller's property from the bottom bunk to the top bunk, and ordered Plaintiff to move in.   Plaintiff refused to enter the cell.  He approached floor officers C/O Rincon and C/O Hernandez, informed them about his two enemies in the building, and asked to be housed in another building.  C/O Hernandez pushed Plaintiff into the cell and shut the cell door.  Plaintiff continued to complain about his situation to the defendants.  Sgt. Green told him, "Handle it, Thompson." (2d Amd Cmp ¶34.)  On November 14, 2006, inmate Miller attacked Plaintiff, stabbed him twice, cut Plaintiff's neck and eye, and stabbed him in the left arm.

### *Adverse Conditions of Confinement and Excessive Force*

C/O Tucker knew Plaintiff needed his medically-ordered orthopedic knee brace and cane, but on October 5, 2006[5] he forcefully took the brace and cane and destroyed the brace.  C/O Tucker then ordered Plaintiff to "get to your building now!" (2d Amd Cmp ¶37.)  The building was more

---

[5]Although Plaintiff does not give a date for this event in the Second Amended Complaint, he gives the date as October 5, 2006 in the original Complaint filed September 5, 2007.  Cmp, Doc. 1, Exh. D at 41-42.

than two hundred yards away.  Plaintiff asked C/O Tucker to give him back the medical devices, but he refused and told Plaintiff that if he didn't get going, he would be thrown in the Hole.  Plaintiff obeyed and limped the long distance.  Upon entering the building, Plaintiff's knee gave out and he fell to the floor.  Plaintiff cried out in pain and begged for help.  C/O Tucker grabbed Plaintiff's arms, dragged him across the floor, and threw him into the cell.  Plaintiff complained to C/O Tucker, Sgt. Green, and Sgt. Huckabay that he was in severe pain, but he was not allowed to see a doctor until a few weeks later.

The doctor examined Plaintiff.  Plaintiff informed the doctor that C/O Tucker had taken away his medical devices.  The doctor told Plaintiff that his knees had been further damaged by walking without the brace and cane.  The doctor immediately ordered the return of Plaintiff's devices and said he should wear soft-soled shoes.  The doctor told Med Tech Chapman and RN Davis that no prison guard should ever take away any of Plaintiff's medical devices, and C/O Tucker's actions were not acceptable.  RN Davis and Med Tech Chapman questioned C/O Tucker, who admitted he took Plaintiff's brace and intentionally destroyed it, claiming he felt Plaintiff did not need a knee brace.

### *Additional Excessive Force*

On November 14, 2006, inmate Miller attacked Plaintiff, stabbed him twice, cut Plaintiff's neck and eye, and stabbed him in the left arm.  That same night, C/O Thompson and C/O Melendez sprayed Plaintiff in his eyes, nose, and mouth, and across his upper torso with an unknown gas and chemicals, which burned Plaintiff terribly.  C/O Thompson and C/O Melendez then grabbed Plaintiff and handcuffed his hands in back, disregarding Plaintiff's disability and limited mobility.  C/O Thompson and C/O Melendez dragged Plaintiff, still cuffed, more than 250 feet across concrete, rocks, gravel, grass and dirt.  At one point, C/O Melendez cursed at Plaintiff, and both officers threw him to the ground.  Plaintiff begged them to stop the assault, but they continued to drag him until his pants and underwear came off and he was completely exposed.  Several officers, including two female officers C/O Rincon and Ms. Magee, laughed loudly at him, and Ms. Magee picked his underwear up off the ground.

As a result of this attack, Plaintiff suffered severe and constant pain in his neck, back, shoulders, left knee, and head.  Plaintiff was taken to the doctor who found that the officers had

damaged and ruptured several discs in Plaintiff's neck and back.  The doctor ordered Plaintiff to use a wheelchair and told Plaintiff, in the presence of several nurses, that he should be careful because another attack could put him in a wheelchair permanently.

### *Retaliation*

Plaintiff filed many 602 complaints for being denied safe housing, and C/O Tucker, Sgt. Green, and Sgt. Huckabay became very angry about Plaintiff's complaints about his safety and told him to "keep [his] mouth shut" and that he would be "dealt with."  (2d. Amd Cmp ¶61.)  Plaintiff alleges that Sgt. Green, Sgt. Huckabay, and C/O Tucker retaliated against him for filing complaints when they repeatedly removed him from his cell and forced him to share a cell with known enemy gang members.

## III.    DEFENDANTS' EVIDENTIARY OBJECTIONS

Defendants have filed evidentiary objections to Plaintiff's evidence in support of his opposition to the motion to dismiss.  (Doc. 67.)

### A.    Evidence Not Used by the Court

Defendants object to the following evidence on various grounds.  However, the Court did not rely on any of this evidence in making these findings and recommendations.  Therefore, Defendants' objections to the evidence listed immediately below are overruled.

(1)    Letter to Pearlie Mae Bell (Doc. 61 at 37, Ex. A #2.)

(2)    Letter from Pearlie Mae Bell (Doc. 61 at 38-39, Exh. A #3-4.)

(3)    Nov. 27, 2005, Inmate Request for Interview (Doc. 61 at 40-41, Exh. A #5-6.)

(4)    Handwritten Notes (Doc. 61 at 42, Exh. A #7.)

(5)    Letter from Ombudsman Lonnie Jackson (Doc. 61 at 45, Exh. B #10.)

(6)    Compatibility Chrono (Doc. 61 at 69, Exh. F #33.)

(7)    November 21, 2006 Statement of Facts (Doc. 61 at 89-92, Exh. G #55-58.)

(8)    Handwritten Notes dated November 19, 2006 (Doc. 61 at 94-99, Exh. H.)

(9)    Medical Records (Doc. 61-1 at 1-18, Exh. I.)

(10)    Property Receipts (Doc. 61-1 at 28, 38-39, Exh. J #94, 104-104.)

(11)    Medical and Inmate Appeal Records (Doc. 61-1 at 46-54, Exh. L.)

**B.      CDC-695 Forms and Letter from Inmate Appeals Branch**

Defendants object to Plaintiff's CDC 695 forms and a Letter from the Inmate Appeals Branch as evidence, listed immediately below, as hearsay with no existing exception.   Defendants also object on the grounds that the documents appear altered, and that Plaintiff failed to include their chain of custody or lay a proper foundation.

(1)      CDC 695 forms dated October 31, 2006, November 13, 2006, November 29, 2006, December 11, 2006 (Doc. 61 at 62-65, Exh. E #28-31.)

(2)      CDC 695 forms dated November 13, 2006 and November 29, 2006 (Doc. 61 at 85, 86, Exh. G #51, 52.)

(3)      CDC 695 form dated December 18, 2006 (Doc. 61-1 at 27, Exh. J #93.)

(4)      CDC 695 form dated December 8, 2006 (Doc. 61-1 at 44, Exh. K #110.)

(5)      CDC 695 forms dated November 13, 2006 and December 13, 2006 (Doc. 61-1 at 59-61, Exh. M #126-128.)

(6)      CDC 695 forms dated January 4, 2007 and January 19, 2007; and an undated form (Doc. 61-1 at 81-83 , Exh. P #149-151.)

(7)      Letter from Inmate Appeals Branch dated May 7, 2006 and CDC 695 forms dated October 31, 2006, November 29, 2006, December 8, 2006, December 11, 2006 (2 forms), December 13, 2006, and December 18, 2006, January 4, 2007, January 19, 2007, and February 6, 2007; and an undated form (Doc. 61-1 at 85-92, 94-97, Exh. Q # 153-160, 162-165.)

Plaintiff argues that these forms are not hearsay, because they are direct responses from the appeals coordinators, and the fact that they are appeal forms used during the Inmate Appeal Process establishes a proper foundation and chain of custody.  Plaintiff argues that some of these forms do not contain any notations and therefore are not "altered," and Plaintiff's handwritten notations on the other forms are his responses back to the appeals coordinator.  Plaintiff also argues that the forms are relevant to show his efforts to exhaust administrative remedies and the appeals coordinators' efforts to block exhaustion.

*///*

**Discussion**

These forms and letter are responses from the appeals coordinators and the Inmate Appeals Branch, informing Plaintiff of the reasons his appeal documents were screened out or otherwise rejected and returned to him without being considered on the merits. In the Court's experience, these are standard forms used by the California Department of Corrections and Rehabilitation (CDCR) in responding to inmate appeals, and they fall under the hearsay exception for records of a regularly conducted activity. Fed. R. Evid. 803(5). Defendants raise the challenge of authentication as to these exhibits. Here, authentication does not need to be done by a person with knowledge, as the circumstances in which Plaintiff acquired the documents, the appearance of the documents, and substance of the documents are sufficient to suggest that these documents are what they purport to be. Fed. R. Evid. 901(a). Plaintiff's handwritten notes on the forms do not undermine the authentication. In fact, Plaintiff has explained that the notes are to be part of the permanent appeal attachment and therefore part of the record. The bottom of the form invites Plaintiff to "return this form to the Appeals Coordinator with an explanation of why you believe it to be in error," which Plaintiff did. See example, Doc. 61-1 at 92, Exh. Q #160. With respect to Defendants' objection that Plaintiff has not laid a proper foundation, the Court finds it sufficient that Plaintiff refers to the exhibits, in the body of his opposition, as evidence in support of the arguments in his opposition. Accordingly, Defendants objections to these forms and letter are overruled.

### C.    CDC 602 Appeals

Defendants object to some of the copies of CDC 602 Appeals submitted as evidence by Plaintiff, listed immediately below, on the ground that the appeals are hearsay with no existing exception. Defendants also object on the grounds that the documents appear altered, and that Plaintiff failed to include their chain of custody or lay a proper foundation.

(1)    CDC 602 Appeal dated October 19, 2006 (Doc. 61at 60, 61, Exh. E #25, 27.)

(2)    CDC 602 Appeal dated December 5, 2006 (Doc. 61 at 66, 67, Exh. E #31, 32.)

(3)    CDC 602 Appeal dated November 19, 2006 (Doc. 61 at 83, 84, Exh. G #47, 49.)

(4)    CDC 602 Appeal dated December 8, 2006 (Doc. 61-1 at 20-22, Exh. J #85, 87, 88.)

///

(5)  CDC 602 Appeal dated November 30, 2006 (Doc. 61-1 at 41-43, Exh. K #106, 108, 109.)

(6)  CDC 602 Appeal dated January 28, 2007 (Doc. 61-1 at 78-80, Exh. P #145, 147, 148.)

Plaintiff argues that these appeals are relevant to the claims in his complaint, that 602 appeal forms are part of the inmate appeals process and thus do not require a chain of custody or proper foundation, and that Defendants' argument that the appeals "appear" to be altered is insufficient. Plaintiff also asserts that the "alteration" on some of the forms is part of his re-submission of the appeal and is in compliance with the Inmate Appeals Process.

**Discussion**

These documents are copies of CDC 602 inmate appeals submitted by Plaintiff concerning various complaints about prison conditions. In the Court's experience, these documents are standard CDCR forms which inmates are required to use to submit inmate grievances and appeals, and therefore they fall under the hearsay exception for records of a regularly conducted activity. Fed. R. Evid. 803(5). Defendants raise the challenge of authentication as to these exhibits. Here, authentication does not need to be done by a person with knowledge, as the circumstances in which Plaintiff acquired the documents, the appearance of the documents, and substance of the documents are sufficient to suggest that these documents are what they are. Fed. R. Evid. 901(a). Plaintiff's handwritten notes and alteration of the forms do not undermine the authentication. In fact, it appears that the alterations were made by Plaintiff in response to instruction by prison officials, before re-submitting the appeal. See example, Doc. 61 at 62, Exh E #25, 27 (note at bottom of altered page states "Resubmitted Again as told to do so; see 695 form.") Thus, the Court finds the alterations to be part of the forms. With respect to Defendants' objection that Plaintiff has not laid a proper foundation, the Court finds it sufficient that Plaintiff refers to the exhibits in the body of his opposition as evidence in support of the arguments in his opposition. Accordingly, Defendants objections to these CDC 602 Appeals as evidence are overruled.

///

///

**D.**     **Correspondence with the Director, Prison Law Office, and Inmate Appeals Branch**

Defendants object to the use of Plaintiff's correspondence, listed below, as evidence, as hearsay without any exception and on the grounds that Plaintiff did not include their chain of custody or lay a proper foundation.

(1)     Correspondence with the "Director" and the Prison Law Office (Doc. 61-1 at 68-74, Exh. O #135-141.)

(2)     Correspondence with the Inmate Appeals Branch (Doc. 61-1 at 73-75, Exh. O #140-142.)

Plaintiff argues that these exhibits are not hearsay, and that there are no chain of custody issues or lack of proper foundation by Plaintiff.

**Discussion**

These exhibits contain letters, handwritten by Plaintiff and addressed to Mr. Director, N. Grannis and S. Emigh; Ms. Hagler at the Prison Law Office; and Prison Law Library Attorneys, complaining that his 602 appeals are not being processed.  The letters are hearsay because they are offered in evidence to prove the truth of the matter asserted by Plaintiff, namely that Plaintiff's 602 appeals were not being processed, with no existing exception.  Accordingly, Defendants' hearsay objections are sustained, and these exhibits are stricken from the record..

**IV.     MOTION TO DISMISS FOR FAILURE TO EXHAUST**

**A.     Statutory Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the

exhaustion requirement applies to all prisoner suits relating to prison life, <u>Porter v. Nussle</u>, 435 U.S. 516, 532, 122 S.Ct. 983 (2002).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which Defendants have the burden of raising and proving the absence of exhaustion. <u>Jones</u>, 549 U.S. at 216; <u>Wyatt</u>, 315 F.3d at 1119. The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. <u>Wyatt</u> at 1119 (citing <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. <u>Wyatt</u> at 1119-20. If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. <u>Id</u>. However, a prison inmate's compliance with the PLRA's administrative exhaustion requirement as to some, but not all, claims brought in civil rights action does not warrant dismissal of the entire action; rather, the court should proceed with the exhausted claims. <u>Jones</u>, 549 U.S. 199.

The Court takes judicial notice of the fact that the CDCR has an administrative grievance system for prisoner complaints. Cal.Code Regs., tit. 15 § 3084.1 (2006). The process is initiated by submitting a CDC Form 602. <u>Id</u>. at § 3084.2(a) (2006). At the time of the events at issue in Plaintiff's complaint, appeals were required to be submitted within fifteen working days of the event being appealed, and the process was initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. <u>Id</u>. at §§ 3084.5, 3084.6 (2006). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." <u>Id</u>. at § 3084.5 (2006). In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006); <u>McKinney</u>, 311 F.3d. at 1199-1201.

**B.    Defendants' Motion**

Defendants argue that the claims against them should be dismissed because Plaintiff failed to exhaust the CDCR's administrative appeals process regarding his claims against Defendants.

///

11

1.   **Failure-to-Protect Claims Against Defendants Tucker, Green, Huckabay, Hernandez, Rincon, Deathridge, and Lee**

Defendants submit evidence that between Plaintiff's transfer to PVSP in December 2005 and the filing of his original Complaint with the Court on September 5, 2007, Plaintiff submitted seventeen inmate appeals that were accepted for review by the PVSP and Corcoran State Prison ("CSP") appeals offices. (Declaration of J. Morgan ("Morgan Decl."), Doc. 56 ¶5; Declaration of T. Campbell ("Campbell Decl."), Doc. 52-2 ¶5.) Six of those appeals were accepted and reviewed at the final level of review by the Office of Inmate Appeals before Plaintiff filed suit on September 5, 2007. (Declaration of D. Foston ("Foston Decl."), Doc. 54 ¶3.) Defendants assert that none of those six appeals concerned allegations of staff misconduct committed by any of the Defendants. (Morgan Decl. ¶5, Campbell Decl. ¶5.)

In opposition, Plaintiff provides evidence that he filed 602-appeal #PVSP-06-00906, which was denied at the Director's Level on August 4, 2006,[6] (Opp'n, Doc. 61 at 4, Exh. C.), and 602-appeal #PVSP-06-00844, which was denied at the Director's Level on September 19, 2006, (Id. at 21, Exh. D).

Defendants reply that Plaintiff's appeal #PVSP-06-00906 did not allege staff conduct by Defendants, but concerned a January 4, 2006 Rules Violation Report issued for mutual combat between Plaintiff and inmate Stringer, which Plaintiff believed to be incorrect because he was defending himself, and Plaintiff's request for psychological treatment and to have the disciplinary findings reversed. With respect to Plaintiff's appeal #PVSP-06-00844, Defendants reply that it was not a staff complaint, but concerned Plaintiff's psychological problems due to his housing with other inmates, because he was a convicted sex offender, and requested (1) no reprisals, (2) to have his single cell status honored, (3) to be removed from his cell and away from a gang member, and (4) to receive psychological and medical treatment. (Exh. 6 to Morgan Decl., Doc. 56-1 at 2.)

---

[6]In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. Plaintiff signed the Complaint, First Amended Complaint, and Second Amended Complaint under penalty of perjury. (Doc. 1 at 5; Doc. 19 at 4; Doc. 25 at 5.) Therefore, Plaintiff's opposition to the motion to dismiss is based in part on the evidence in his verified complaints and their accompanying exhibits. Plaintiff's opposition filed on November 21, 2011, is also verified and therefore contains admissible evidence. (Doc. 61.)

Defendants also assert that appeal #PVSP-06-00844 was not decided at the final level of review until after Plaintiff filed this lawsuit.  Id.

**Discussion**

The events at issue in this action, with regard to Plaintiff's failure-to-protect claims, concern incidents between Plaintiff and other inmates in January, October, and November 2006. Defendants' evidence supports the assertion that between December 2005 and September 5, 2007, the date Plaintiff's lawsuit was filed, seventeen of the appeals submitted by Plaintiff at PVSP and CSP were accepted for review at the first or second levels of review.  (Morgan Decl. ¶5 and exhibits, Campbell Decl. ¶5 and exhibits.)  Defendants' evidence also supports the assertion that six of the seventeen appeals were accepted for review, and denied, at the Director's Level of review.  ( Foston Decl., Doc. 54 ¶3.)  The Court finds that only two of the six appeals make reference to Plaintiff's fears of attack, actual attack, or actions by prison officials placing Plaintiff at risk of attack:  appeals #PVSP-06-00844 and #PVSP-06-00906.

*Appeal #PVSP-06-00906*

Plaintiff initially submitted appeal #PVSP-06-00906 on March 18, 2006.  (Opp'n, Doc. 61, Exh. C.)  The appeal was denied at the second level of review on May 2, 2006, and at the third level of review on August 4, 2006.  Id.  This appeal focuses on Plaintiff's complaints that he was denied due process during an investigation and unfairly disciplined.  Id.  Plaintiff requests (1) to receive psychological treatment and (2) to have the disciplinary infraction erased from his file and credits restored.  Id.  While Plaintiff does state that he repeatedly told Sgt. Green and C/O Tucker of his "safety concerns," there is no further explanation of the "safety concerns," and Plaintiff's statement, without more, is not sufficient to give authorities notice of Plaintiff's allegations that Defendants were failing to protect him.  Therefore, the Court finds that Plaintiff did not exhaust his remedies with appeal #PVSP-06-00906 with regard to his allegations that Defendants failed to protect him.

*Appeal #PVSP-06-00844*

Plaintiff initially submitted appeal #PVSP-06-00844 on March 8, 2006.  (Opp'n, Doc. 61, Exh. D.)  He requests an investigation because of safety concerns he brought to the attention of staff, including Sgt. Huckabay, Sgt. Green, and C/O Tucker, on numerous dates.  Id.  Plaintiff states that

13

at Pelican Bay State Prison, he was placed in administrative segregation for his safety because of "several adamant threats on my life," and when he was transferred to PVSP, it was decided that he should be placed in protective housing for his safety.[7] Plaintiff expresses concern that he has "seen more fights, more assaults on inmates by other inmates [on the PVSP Sensitive Needs Yard since his arrival at PVSP on December 22, 2005] than [during his] whole prison confinement." Id. Plaintiff states that he told staff on March 8, 2006 of his concerns about "this current gangmember that I was forced against my will to cell up with," asserting that Plaintiff is "documented on file" not to be placed in any cell with a Blood-Crip gangmember under any circumstances, due to his conviction, impaired physical mobility, and mental impairment.  Id.  Plaintiff expresses that his status as a convicted rapist causes him to feel highly at risk of attack and constantly very paranoid. Id.  Plaintiff alleges that he has told floor staff repeatedly of his concerns, but is not receiving help. Id.  He requests (1) to receive no reprisal (anymore), (2) for PVSP staff to respect and honor his single cell status, (3) to be removed from this cell with this known gangmember ASAP, and (4) to receive proper psychological and medical treatment. Id.  The appeal was partially granted at the first level of review.  Id.  Plaintiff appealed to the second level, expressing dissatisfaction that PVSP continues to subject him to unsafe living conditions.  Id.  The appeal was denied at the second level on June 5, 2006, and at the third level on September 19, 2006.  Id.

Defendants' assertion that this appeal was not decided at the final level of review until after Plaintiff filed this lawsuit is incorrect, because the appeal was decided on September 19, 2006, and Plaintiff filed this lawsuit on September 5, 2007.

Defendants argue that this appeal does not concern allegations of staff misconduct committed by defendants Tucker, Green, Huckabay, Hernandez, Rincon, Deathridge, or Lee.  Defendants are correct that this appeal does not allege particular misconduct by any of the Defendants in the appeal. However, Plaintiff does request an investigation because of safety concerns he alleges he brought to the attention of staff, including Sgt. Huckabay, Green, and C/O Tucker.  Plaintiff did not name all of the defendants in the appeal; however, the legal standard is not whether all of the Defendants

---

[7] Plaintiff refers to "Exhibits A, B, C, and D signed by Warden's [sic], Assist. Warden, Lt. Miller, and Sgt. Maxwell," which were not submitted to the Court for review.  Id.

1   were named in the appeal or whether Plaintiff cited particular misconduct.  The PLRA did not

2   impose a "name all defendants" requirement as part of exhaustion.  Jones, 549 U.S. at 217.  "[T]he

3   primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice

4   to a particular official that he may be sued."  Id. at 219; Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th

5   Cir. 2009).  Here, Plaintiff clearly states his concerns that he will be harmed by other inmates if

6   forced to share a cell with a gangmember or remain on the Sensitive Needs Yard, due to a history

7   of threats against him due to his conviction.  Thus, this appeal placed prison officials on notice of

8   the problem.  Therefore, Plaintiff exhausted his remedies with appeal #PVSP-06-00844 with regard

9   to his allegations in the complaint that defendants Tucker, Green, Huckabay, Hernandez, Rincon,

10  Deathridge, and Lee failed to protect him.  Accordingly, Defendants' motion to dismiss Plaintiff's

11  failure-to-protect claims for failure to exhaust remedies should be denied.

12          **2.       Conditions of Confinement and Excessive Force Claims Against**
13                   **Defendant Tucker**

14          Defendants provide evidence that Plaintiff did not address his allegations against defendant

15  Tucker -- that Tucker took away Plaintiff's knee brace and cane and forced him to walk more than

16  two hundred yards, dragged Plaintiff across the floor, and threw him into a cell -- in a prison appeal,

17  at any level of review.  (Morgan Decl. ¶5, Campbell Decl. ¶5, Foston Decl. ¶3.)

18          Plaintiff asserts that he submitted appeals concerning Officer Tucker's cruel orders and

19  abusive actions towards Plaintiff, and also submitted a Complaint to the California Victims

20  Compensation and Government Claims Board (CVCGCB) addressing Tucker's actions in taking

21  Plaintiff's knee brace.  Plaintiff submits as evidence a copy of an appeal, with no assigned log

22  number, submitted on December 8, 2006.  (Doc. 61, Exh. J.)  In the appeal, Plaintiff requests to be

23  relocated away from PVSP "[b]efore I am killed from the hands of ... your paid correctional

24  officers."  Id.  Plaintiff states that Officer Tucker verbally threatened him, dragged him, attacked him,

25  and "forcefully took my Doctor's [sic] Issued cane and my orthopedic knee brace! ('on 10/5/2006')."

26  Id.  Plaintiff also states in the appeal that Tucker admitted to medical staff that he felt Plaintiff did

27  not need his medically-issued knee brace, so he took it and destroyed it.  Id.

28  ///

Plaintiff also submits a copy of appeal #PVSP-07-00340 which he submitted on December 27, 2006.  Id.  At the first formal level, Plaintiff complains that "[m]y orthopedic knee brace was 'forcefully' took and destroyed by C/O W. Tucker on 10/5/06."  Id.  Plaintiff states that when the nurse contacted Tucker, inquiring about the knee brace, Tucker admitted that he felt Plaintiff didn't need his knee brace, so he destroyed it.  Id.

Plaintiff also submits evidence of claim #G566941 which he submitted to the CVCGCB on April 4, 2007, in which Plaintiff complains that Officer Tucker forcefully took his knee brace and cane, and forced him to walk a long distance, causing him to fall when his damaged knee gave out, resulting in injuries.  Id.

**Discussion**

Plaintiff's evidence shows that he submitted form-602 appeals at the prison concerning his allegations that defendant Tucker took away his knee brace and cane, destroyed the knee brace, forced him to walk a long distance, dragged him, and attacked him.  (Doc. 61, Exh. J.)  Evidence also shows that Plaintiff submitted a claim to the CVCGCB concerning the allegations that Tucker took his knee brace and forced him to walk, causing him to fall.  Id.  Resolution of CVCGCB claims do not act to exhaust remedies under the PLRA.  Woodford, 548 U.S. at 85; McKinney, 311 F.3d. at 1199-1201.  With regard to Plaintiff's form-602 appeals, there is no evidence that any of these appeals were accepted and decided at the third level of review.  However, Plaintiff argues that the appeals process was not "available" to him because his appeals were improperly rejected.

The evidence shows that  facially, Plaintiff 's appeals were rejected for plausible reasons, such as for being untimely, incomplete, in improper form, duplicative, for addressing multiple issues in one appeal, for using abusive language, or for using whiteout.[8]  (Id., Exh. P, Q.)  However, the Court cannot discount the evidence of Plaintiff's persistent and vehement pleas that his 602 appeals complaining about staff abuse were rejected for improper reasons or not allowed to proceed to the final level of review.  Plaintiff declares under penalty of perjury that he "did in good faith, tried over & over & over again to exhaust his 602's grievances to the next level, but the appeals coordinators

---

[8]California regulations in effect in 2006 and 2007 allowed appeals to be rejected for abuse of the appeal system.  Cal.Code Regs., tit. 15 § 3084.4 (2006).

'continued' to block all paths toward such." (Opp'n, Doc. 61 at 27.) Plaintiff also declares that officials refused to process some of his appeals for "made-up excuse[s] " (Opp'n, Doc. 61 at 26-30.) Plaintiff provides copies of appeal documents in which he complained about his appeals not being processed despite his efforts to submit proper appeals or to make corrections and re-submit them. (Id. at 63, Exh. E #29; Doc. 61-1 at 78-80, 83, Exh. P #145-148 , 151.) Plaintiff also provides copies of unexhausted appeals in which he complained that defendant Tucker had taken his knee brace and destroyed it, and that he was dragged over rocks and gravel until his pants and underwear came completely off. (Opp'n, Doc. 61-1 at 23-26, Exh. J #89-92; at 41-43, Exh. K #106-109.) Based on the foregoing evidence, the Court finds that Plaintiff exhausted the remedies available to him and provided sufficient notice to prison officials, with regard to his allegations of adverse conditions of confinement and excessive force against defendant Tucker.  Therefore, Defendants' motion to dismiss this claim for failure to exhaust should be denied.

### 3. Excessive Force Claims Against Defendants Melendez and Thompson

Defendants argue that Plaintiff did not exhaust his remedies with respect to his excessive force claims against Officers Melendez and Thompson, because Plaintiff did not submit inmate appeals at any level of review addressing these claims. (Morgan Decl. ¶5, Campbell Decl. ¶5, Foston Decl. ¶3.)

Plaintiff submits a copy of an appeal with no assigned log number, which was submitted on November 30, 2006. (Doc. 61-1 at 41.) In the appeal, Plaintiff complains that he was handcuffed and assaulted and dragged across the ground by Officers Thompson and Melendez. Id. Plaintiff requests in the appeal (1) that video evidence to be preserved, (2) to be relocated from PVSP for safety concerns, and (3) to be placed on single cell status. Id.

**Discussion**

The Court finds no evidence on the record that Plaintiff had any appeal decided at the third level of review that addressed the November 14, 2006 incident of excessive force alleged against defendants Melendez and Thompson. However, as discussed above, Plaintiff argues that the appeals process was not "available" to him because his appeals were improperly rejected, and submits evidence demonstrating that he persistently and vehemently complained that his 602 appeals

complaining about staff abuse were rejected for improper reasons or not allowed to proceed to the final level of review.  Plaintiff also provides copies of unexhausted appeals in which he complained that defendants Melendez and Thompson "hand-cuffed (Hands in Back) & assaulted and forcefully & brutely [*sic*] dragged over '250 ft.' across concrete, lose rocks, gravel, dirt & grass by coorectional [*sic*] officers C/O D. Thompson & also C/O J. Melendez," and that he was dragged over rocks and gravel until his pants and underwear came completely off.  (Doc. 61-1 at 41, Exh. J #106; at 41-43, Exh. K #106-109.)

Based on the foregoing, the Court finds that Plaintiff exhausted the remedies available to him and provided sufficient notice to prison officials, with regard to his allegations of excessive force against defendants Melendez and Thompson.  Accordingly, Defendants' motion to dismiss these claims for failure to exhaust should be denied.

### 4.    Retaliation Claims Against Defendants Green, Huckabay, and Tucker

Defendants argue that Plaintiff did not exhaust his retaliation claims against Officers Green, Huckabay, and Tucker, because Plaintiff did not submit inmate appeals at any level of review addressing these claims.  (Morgan Decl. ¶5, Campbell Decl. ¶5, Foston Decl. ¶3.)   Defendants acknowledge that Plaintiff filed inmate appeal #PVSP-06-00844 on March 8, 2006, requesting no further "reprisals" to occur; however, they argue that he did not address any retaliatory acts performed by defendants Green. Huckabay, or Tucker.[9]  (Foston Decl. ¶5, Exh. 1.)

In opposition, Plaintiff claims that he exhausted the remedies *available* to him with regard to his retaliation claim.  Plaintiff asserts that appeals coordinators at PVSP repeatedly refused to process his 602 appeals, out of retaliation.  Plaintiff submits as evidence copies of several written responses from appeals coordinators, rejecting his appeals for a variety of reasons. (Opp'n, Doc. 61, Exhs. P, Q.)

///

///

---

[9]Defendants also argue that appeal PVSP-06-00844 was not reviewed at the third level of review until September 19, 2006, <u>after</u> Plaintiff filed suit.  Id.  This argument, which is without merit because Plaintiff did not file this lawsuit until September 5, 2007, was addressed by the Court above at IV.B.1.

Defendants argue that the rejection notices from appeals coordinators submitted as evidence by Plaintiff do not provide evidence that the appeals were improperly screened out, or that the appeals process was unavailable under the PLRA.

**Discussion**

The Court finds no evidence on the record that an appeal concerning Plaintiff's allegations of retaliation was completed through the Director's Level of review.  Plaintiff's appeal #PVSP-06-00844 requests "No Reprisal (anymore);" however this request, without more, is not sufficient to place the prison on notice that Defendants were retaliating against Plaintiff for filing inmate complaints. (Opp'n, Doc. 61, Exh. D.) Appeal #PVSP-06-00844 focuses on Plaintiff's allegations that he was in danger from sharing a cell with gangmembers and being placed on the Sensitive Needs Yard, not on retaliation.  Id.

As discussed above, Plaintiff's argument that the appeals process was not "available" to him because his appeals were improperly rejected is persuasive.  However, Plaintiff provides no evidence that any of his unexhausted appeals, or responses to notices rejecting his appeals, concerned allegations that he was being subjected to retaliatory acts because he filed inmate appeals or otherwise acted within his First Amendment rights.  Plaintiff has not alleged facts or provided evidence in support of his argument that he made a good faith effort to exhaust the remedies available to him with regard to his retaliation claim.  Accordingly, the Court finds that Defendants' motion to dismiss Plaintiff's retaliation claim for failure to exhaust remedies should be granted, dismissing the retaliation claim against defendants Green, Huckabay, and Tucker.

**V.    MOTION TO DISMISS RETALIATION CLAIM FOR FAILURE TO STATE A CLAIM – RULE 12(b)(6)**

Defendants move to dismiss Plaintiff's retaliation claim against defendants Green, Huckabay, and Tucker for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  As discussed above, the Court finds that Plaintiff did not exhaust the available administrative remedies for his retaliation claim before filing suit, and that Defendants are entitled to dismissal of the retaliation claim on this ground.  Based on this finding, the Court does not reach Defendants' other arguments in support of their motion to dismiss the retaliation claim.  See Perez v. Wisconsin

Dep't of Corr., 182 F.3d 532, 534 (7th Cir. 1999) (vacating judgment and remanding with instructions to dismiss for failure to exhaust in case where district court granted summary judgment to defendants on the merits and did not rule on their pending motion for dismissal based on failure to exhaust).

## VI.   CONCLUSION AND RECOMMENDATION

Defendants have met their burden of demonstrating that Plaintiff failed to exhaust his administrative remedies prior to filing suit, in compliance with § 1997e(a), for Plaintiff's retaliation claim against defendants Green, Huckabay, and Tucker.  Defendants have shown an absence in the official records of any evidence that Plaintiff exhausted his remedies for the retaliation claim by an inmate appeal pursuant to Title 15 of the California Code of Regulations § 3084.1, et seq., concerning Plaintiff's allegations in the complaint against Defendants in this action.  Plaintiff has not submitted evidence of any appeals that satisfy the exhaustion requirement for the retaliation claims, nor has Plaintiff submitted evidence that he exhausted all of the remedies available to him for these claims.  Therefore, the Court finds that Defendants are entitled to dismissal of Plaintiff's retaliation claims.

However, Defendants have not met their burden of demonstrating that Plaintiff failed to exhaust his administrative remedies prior to filing suit, in compliance with § 1997e(a), for (1) Plaintiff's adverse conditions of confinement and excessive force claims against defendant Tucker, (2) Plaintiff's excessive force claims against defendants Melendez and Thompson, or (3) Plaintiff's failure-to-protect claims against defendants Tucker, Green, Huckabay, Hernandez, Rincon, Deathridge, and Lee.  Plaintiff has submitted evidence that he exhausted all of the remedies available to him with regard to these claims.  Therefore, the Court finds that Defendants are not entitled to dismissal of these three claims.

Therefore, the Court HEREBY RECOMMENDS that:

1.     Defendants' motion to dismiss, filed on September 27, 2011, be GRANTED IN PART, dismissing Plaintiff's retaliation claim, without prejudice, for failure to exhaust remedies; and

///

2.      This action proceed against defendant Tucker for subjecting Plaintiff to adverse conditions of confinement; against defendants Tucker, Green, Lee, Rincon, Hernandez, Deathridge, and Huckabay for failing to protect Plaintiff; and against defendants Tucker, Thompson, and Melendez for using excessive force against Plaintiff.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1).  Within thirty (30) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:**      **December 21, 2012**              **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE